IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHERRY SMOTHERMAN<br>*Plaintiff* | § § § | |
| vs. | § | C.A. No. |
| | § § | |
| METROPOLITAN LIFE INSURANCE COMPANY<br>*Defendant* | § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES SHERRY SMOTHERMAN, Plaintiff, and files this Original Complaint asserting causes of action for relief at law and equity against Defendant METROPOLITAN LIFE INSURANCE COMPANY. Plaintiff, by the undersigned counsel, avers on personal knowledge as to herself and her own acts and beliefs, that legally sufficient evidence exists, or will exist after a reasonable opportunity for further investigation and discovery, to support the following:

### PARTIES

1. Plaintiff, Sherry Smotherman, is a resident of Harris County, Texas, and a "beneficiary", as defined by 29 U.S.C.§§1002(7) and (8), of the employer welfare benefit plan, (the "Plan"), of Shell Oil Company, (hereinafter "Shell"), her employer.

2. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration at 200 Constitution Avenue N.W., Washington, D.C. 20210, and the Secretary of Treasury at 1500 Pennsylvania Avenue N.W., Washington, D.C. 20220 by certified mail, return receipt requested.

3. Defendant is an insurance company doing business in the State of Texas and which may be served through its registered agent CT Corporation, 350 N. St. Paul Street, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4. This action against Defendant arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq. This Honorable Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

5. Plaintiff has complied with all prior requirements and conditions necessary for filing this lawsuit.

6. Plaintiff has exhausted the administrative remedies made available to her by Defendant.

7. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because a substantial part of the events giving rise to Plaintiff's claim arose here and one or more of the breaches of which Plaintiff complains occurred here.

## STATEMENT OF FACTS

8. Plaintiff is a chemical pipeline operator who was employed by Shell for 22 years. Her job required her to work alone in 12 hour shifts, seven days per week. She is disabled due to several debilitating illnesses including, but not limited to, hyperlipemia, unpredictable hypoglycemia, acquired hypothyroidism, moderate recurrent major depression, generalized anxiety disorder, neuritis of left leg, anemia iron deficiency, metatarsalgia, memory loss, insomnia, benign hypertension, migraines, xerotis cutis, neuropathic bilateral foot pain, osteoporosis, bipolar affective disorder, dyursia, anorexia, pancreatitis, gout, dementia, altered mental status, malaise and fatigue, hearing loss, colon polyps, dizziness, and low back pain. Due to some of these injuries, she was determined by Defendant to be disabled, beginning in June 2011, for the purpose of qualifying for short term disability benefits. Plaintiff received short term disability benefits from June 2011 to June 2012.

9. On January 30, 2012, Plaintiff's primary care physician, Dr. Caryl P. Guillermo, wrote a letter releasing Plaintiff to go back to work as of February 9, 2012 with no restrictions. Plaintiff's employer, Shell, however, would not let her return to work for medical reasons based on a medical examination conducted by Dr. Derrick Cameron of Shell Medical, at Shell's Deer Park refinery in February 2012.

10. An Independent Medical Examination performed on Plaintiff by Dr. James Grossman on April 12, 2012, at the request of Shell, confirmed that she could not have returned to work. Dr. Grossman examined Plaintiff and noted a history of episodes of losing time with altered mental status and the shakes. He stated that Plaintiff underwent a glucose tolerance test and had a two hour critically low glucose of 20 milligrams per deciliter. Dr. Grossman listed Plaintiff's present treatment as frequent snacking (approximately every two hours) so that she will not get hypoglycemic and that this is done because Plaintiff is unable to tell when she is becoming hypoglycemic. Plaintiff's occupation was described as an operator at a pipeline working 12 hour shifts. The diagnosis given by Dr. Grossman for Plaintiff was symptomatic hypoglycemia.

11. In response to specific questions contained in the IME, Dr. Grossman stated that he agreed with the diagnosis of symptomatic hypoglycemia. He did not agree that Plaintiff was unable to work, but not for 12 hours per day for seven consecutive days. In response to the specific question on the likelihood of Plaintiff working the shifts required by her job Dr. Grossman stated the following:

"There is a low likelihood that Ms. Smotherman could work alone for a 12 hour shift for up to seven consecutive days. While I have no doubt she could work 12 hours, I would be concerned for her and the plant's safety if she were to develop a hypoglycemic episode. Although she snacks every two hours and this does alleviate her symptoms, she still has likelihood of developing hypoglycemia. She could work a 12 hour shift if another worker was present and was able to assume her job duties if she were to develop hypoglycemia. Physically, I believe she could do the 12 hour shifts for seven days in a row. She would need to be able to take frequent snack breaks to maintain her glucose levels."

12. On May 21, 2012, Dr. Guillermo wrote another letter stating that Plaintiff was originally placed for disability in June 2011, due to issues with increased anxiety at work, such as losing large amounts of time during the day, dizziness, and altered mental status, and a glucose tolerance test that showed Plaintiff's low blood sugar to drop as low as 20. Dr. Guillermo further stated the following:

"From my review of the 3rd party physician's progress note and the information that was available to that physician, I do not see how Ms. Smotherman will be able to independently and safely function in her duties with her current position. Ms. Smotherman's hypoglycemia cannot be predicted and despite the regiments that have been implemented for her. She will not be able to sustain a 12 hour work day without accompaniment safely and therefore will be unable to go back to work if her company is unable to provide her with a position that provides this for her. "

3

13. Plaintiff made a claim for long term disability benefits under the Plan in March 2012. The claim was denied by Defendant on June 12, 2012 with the explanation that, because Plaintiff was released to return to work on 02/07/2012, she was not disabled during the entire Elimination Period of one year from 06/23/2011 to 06/20/2012. The June 12, 2012 denial letter did not mention the IME of Dr. Grossman, performed on April 12, 2012, which concluded that there was a low likelihood that Plaintiff could work alone for a 12 hour shift and should do so only if another worker was present to assume her job duties if she developed hypoglycemia. The denial letter acknowledged that after Plaintiff was released to return to work she was evaluated by Dr. Cameron, the Shell physician, for a fit for duty exam and, based on that exam, she was not allowed to return to work.

14. An appeal of Defendant's denial of long term disability benefits was filed by Plaintiff and received by Defendant on June 22, 2012. At the request of Defendant, an Advisory Report was written by Dr. Evelyn Kemi Balogun on July 31, 2012. That report made a number of findings including that, in Dr. Balogun's professional opinion, Plaintiff's "physical/psychiatric conditions do not support functional limitations for the continuous time period in review June 23, 2011 continuously through the present time." Dr. Balogun acknowledges that Plaintiff has a history suggestive of post-gastric bypass hypoglycemia but, in disagreement with Dr. Guillermo and Dr. Grossman, concluded that the diagnosis was not confirmed. Again, contrary to the findings of Plaintiff's treating physicians, Dr. Balogun opined that, irrespective of her contention that the diagnosis of hypoglycemia has not been confirmed, Plaintiff remains "very functional and independent to a level, which would not substantiate the need for impairment or ongoing work stoppage."

15. Dr. Balogun never examined Plaintiff and never spoke to her about her physical or mental condition. Dr. Balogun did not speak to Dr. Cameron at Shell about the fit for duty exam that he performed on Plaintiff in February 2012 and did not acquire a copy of the exam findings. Dr. Balogun did not speak to Dr. Guillermo, Plaintiff's primary care physician. Dr. Balogun did not speak to Plaintiff's psychiatrist, Dr. Patricia Corke, or her psychologist, Shannon Wenger.

4

16. Defendant denied Plaintiff's appeal by letter dated September 5, 2012. Defendant did not request an extension of time to make a determination on the long term disability appeal, thus, the denial was more than 45 days after Plaintiff submitted her appeal.

17. Unlike the initial June 12, 2012, denial of benefits, which was based on Plaintiff being released to return to work on 02/07/2012 by one of her doctors, the basis for Defendant's denial of Plaintiff's appeal was Dr. Balogun's July 31, 2012 report. Thus, **Defendant commissioned a medical report after its initial denial of Plaintiff's long term disability claim to justify denial of Plaintiff's appeal**. The appeal denial does not even mention the 02/07/2012 release to return to work. It does admit that Shell would not allow Plaintiff to return to work, though it erroneously claims that this was based on the IME evaluation of Dr. Grossman. The appeal denial also acknowledges that Dr. Guillermo had determined that Plaintiff was unable to return to work without accompaniment.

18. Dr. Balogun's conclusion that the diagnosis of hypoglycemia was unconfirmed was based on a research paper cited in her report by Foster-Schubert, which found that hypoglycemia has been documented in post bypass cases and in some of those cases patients may experience a range of symptoms including seizures and loss of consciousness. She stated that the work-up for this condition should include a glucose tolerance test, as was done for Plaintiff, as well as an assessment of insulin & C-peptide levels in context of glucose, sulfonylurea screen, anti-insulin antibodies, possible evaluation of adrenal function, and an assessment of fasting insulin. But, other than the glucose tolerance test, Dr. Balogun does not indicate whether or not this additional work-up was done. More importantly, the Foster-Schubert paper cited by Dr. Balogun states that *"establishing the presence of severe, hyperinsulinemic hypoglycemia requires (1) symptoms of hypoglycemia; (2) low plasma glucose at the time of symptoms(as well as concomitant measurement of elevated serum insulin, C-peptide, and negative sulfonylurea screen); (3) relief of symptoms with the correction of low glucose.* There is no dispute that Plaintiff showed signs and symptoms of hypoglycemia, she had a glucose tolerance test which showed a critically low glucose of 20 milligrams per deciliter, and she was

having snacks every 2 hours to alleviate her symptoms. Thus, from the medical records reviewed by Dr. Balogun, and using the criteria set forth in the study she cited in her own report, the diagnosis of hypoglycemia was confirmed.

19. By disregarding the determination of Shell's own doctor, Dr. Cameron, who conducted a fit for duty exam on Plaintiff and concluded that could not return to work, **Defendant, the claims administrator, and Shell, the Plan Administrator, disagree on whether Plaintiff was able to return to work during the Elimination Period.** There is no person or entity that should know better whether Plaintiff can perform the requirements of her job than her employer, Shell. The bottom line is that Defendant chose to rely on the opinion of a doctor of its own choosing, rather than on Plaintiff's treating physicians, to determine whether Plaintiff was able to work.

20. Plaintiff cannot confirm the terms of the Plan because Defendant failed and refused to provide Plaintiff with a copy of the Plan, notwithstanding written requests for same, along with the Summary Plan Description, and all Plan Amendments, sent to Defendant by certified mail, return receipt requested and by facsimile mail. As of the date of filing this lawsuit Defendant has not provided Plaintiff with a copy of the Plan or the Summary Plan Description. Defendant's failure and refusal to provide the Plan violates 29 U.S.C. §1022(a).

## STANDARD OF REVIEW

21. Plaintiff is entitled to *de novo* review of all issues regarding the interpretation of the Plan documents and the terms of the Plan for long term disability benefits, to the extent that the Plan does not grant Defendant the discretion to interpret the terms of the Plan for long term disability benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). *Firestone* only applies to benefit denials, not fiduciary breach.

22. **Plaintiff is also entitled to *de novo* review of her claim, as well as some discovery, because Defendant denied Plaintiff's appeal of her claim for long term disability benefits for reasons that were different from the reason Defendant denied Plaintiff's original long term disability claim.**

By changing the basis for its denial decisions, Defendant placed Plaintiff in the impossible position of responding to Dr. Balogun's report before it was even written. Fundamental fairness would prohibit Defendant from requiring Plaintiff to play whack-a-mole with Defendant's fast-moving justifications for denial of disability benefits. To the extent that it is Defendant's common practice to change the explanation for denial of its long term disability decisions after claimants have submitted appeals of those decisions, as in this case, Plaintiff must be allowed to conduct discovery to expose this practice.

23. Plaintiff is also entitled to *de novo* review of her claim, or the application of a lower level of deference under an abuse of discretion standard of review, due to Defendant's failure make a determination of Plaintiff's appeal claim within 45 days of the date the claim was appealed.

24. Plaintiff is entitled to *de novo* review of her claim, or the application of a lower level of deference under an abuse of discretion standard or review, since the claims administrator and the Plan Administrator disagree on whether Plaintiff was able to return to work during the Elimination Period.

25. Only Defendant's factual conclusions are to be reviewed with an arbitrary and capricious standard. <u>Pierre v. Connecticut General Life Ins. Co.</u>, 932 F.2d 1552 (5th Cir. 1991). Plaintiff alleges that Defendant's bad faith administration of Plaintiff's claim demands that this Honorable Court give Defendant's denial of Plaintiff's claim a *de novo* review.

26. Plaintiff is entitled to a *de novo* review of her claim, or the application of a lower level of deference under an abuse of discretion standard of review, due to Defendant's inherent conflict of interest as both insurer and claims administrator.

27. Plaintiff is entitled to the application of Texas law in the interpretation of the contract forming the terms of the Plan as well as the application of the terms regarding Plaintiff's legal and equitable remedies against Defendant.

## **DEFENDANT'S FIDUCIARY DUTY**

28. Defendant owed Plaintiff a fiduciary duty to act in the best interest of Plaintiff and the Plan for the sole purpose of providing benefits to Plaintiff. Defendant was acting as the claims fiduciary as defined by

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1102(16) and (21). Pursuant to ERISA and well-established federal common law, a fiduciary duty is imposed on Defendant to treat Plaintiff fairly and reasonably, conduct a full and fair review of the claim, and act in Plaintiff's best interest. The pertinent statute expressly states that ERISA fiduciaries must act solely in the interest of the ERISA plan's participants and beneficiaries and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1)(A). One court has referred to ERISA's fiduciary duty standards as "the highest known to the law." *Donovan v. Bierworth*, 680 F.2d 263, 272, n.8 (2nd Cir. 1982). The United States Supreme Court referred to ERISA's fiduciary duty standards as requiring "higher-than-marketplace" standards of conduct. *Metropolitan Life v. Glenn*, 128 S. Ct. 2343, 2350 (2008). Any failure to act in compliance with this standard is a breach of Defendant's fiduciary duty, which could result in a finding that Defendant's factual conclusions supporting the denial of benefits to Plaintiff were arbitrary and capricious.

29. Defendant's failure to act in good faith in its review, investigation and determination of Plaintiff's claim, as set forth above, as well as its bad faith in violating applicable federal regulations and breach of fiduciary duty, demonstrates that the factual conclusions made by Defendant in denying benefits to Plaintiff were improper, illegal, arbitrary and capricious.

## COUNT ONE
## DEFENDANT BREACHED ITS FIDUCIARY DUTY TO PLAINTIFF

30. Defendant disregarded the diagnoses and conclusions of Plaintiff's treating physicians who concluded that Plaintiff was suffering from hypoglycemia, which resulted in dizziness, altered mental status, stress, low blood sugar, possible loss of consciousness, shakes, forgetfulness, and many other symptoms.

31. Defendant disregarded the diagnoses and conclusions of Dr. Grossman, who performed an IME on Plaintiff at the request of Shell. The IME report concluded that it may be dangerous for Plaintiff to work alone for the 12 hour shifts required by her job.

32. Defendant disregarded the diagnoses and conclusions of Dr. Cameron of Shell Medical, who performed a fit for duty examination of Plaintiff and determined that she could not return to work.

33. Defendant disregarded the May 21, 2012, report of Dr. Guillermo, which indicated that Plaintiff was not able to return to work and, in effect, recanted her February 2012 opinion that Plaintiff was able to return work.

34. Defendant improperly relied on Dr. Balogun's conclusion that the diagnosis of hypoglycemia was not confirmed because the criteria for diagnosing hypoglycemia, according to the studies cited by Dr. Balogun herself, was met and recorded in the medical records reviewed by Dr. Balogun.

35. Defendant breached its fiduciary duty to Plaintiff by changing its basis or explanation for denial of long term benefits after Plaintiff had filed her appeal.

36. As demonstrated above, Defendant's actions were improper, fundamentally unfair, arbitrary and capricious, not based on the applicable law, and could not have been based on language of the Plan.

## COUNT TWO
## EQUITABLE ESTOPPEL

37. Defendant committed fraud, intentional deception, and or gross negligence by representing to Plaintiff in its June 21, 2012, letter that the denial of long term disability benefits was because she was released to return to work on 02/07/2012, then, after Plaintiff filed her appeal addressing that issue, changing the rationale for the denial on appeal to unconfirmed diagnosis of hypoglycemia. Defendant's explanation for denial of the initial claim was reasonably relied on by Plaintiff in preparing her appeal. By fraudulently representing the reason for denial of the claim and/or changing the reason after Plaintiff had filed her appeal, Defendant acted in bad faith in the administration of Plaintiff's long term disability claim and must, therefore, be equitably estopped from advancing either reason for denial in defense of this claim.

## COUNT THREE
## DEFENDANT FAILED TO TIMELY DETERMINE APPEAL

38. Defendant failed to determine Plaintiff's long term disability benefits within 45 days of the date it was submitted. There was no request for any extension of time to make a decision. This failure should be considered as a factor in the amount of deference this court should give to Defendant's decision to deny Plaintiff long term disability benefits.

## COUNT FOUR
## PLAINTIFF'S CLAIM FOR CIVIL ENFORCEMENT AND PENALTIES

39. Pursuant to 29 U.S.C. §1132(c)(B), Plaintiff seeks an award of civil penalties against Defendant in the amount of $100.00 per day from August 3, 2015, until the date Defendant properly responds to Plaintiff's request, made in accordance with ERISA law, for relevant Plan documents.

40. On July 3, 2015, Defendant received the written request of Plaintiff, made by and through her counsel, for all ERISA Plan documents regarding Shell's employee welfare benefit plan. Pursuant to 29 U.S.C. §1132(c)(B), Defendant was required to provide the requested materials within thirty (30) days. As of the date of the filing of this complaint, Defendant has failed and refused to respond to Plaintiff's request.

41. In addition to the civil penalties against Defendant, Plaintiff seeks any and all additional justiciable relief that may be afforded by this Honorable Court, including an order requiring Defendant to provide the Plan documents requested by Plaintiff.

## COUNT FIVE
## PLAINTIFF'S CLAIM FOR LONG TERM DISABILITY BENEFITS

42. As a participant and beneficiary of the Plan, Plaintiff is entitled to receive long term disability benefits for any period of total disability. Plaintiff has been totally disabled since June 2011. She received short term disability benefits from June 2011 until June 2012. Defendant wrongfully denied Plaintiff's claim for long term disability benefits without substantial evidence in support of its

decision and without consistently applying the same basis for denial from its original consideration through the administrative appeal. .

43. Plaintiff is entitled to the full amount of long term disability benefits provided under the Plan from July 2012, and continuing thereafter until Plaintiff reaches the age of termination. Plaintiff has met, and continues to meet, the definitions, criteria, and requirements of the Plan, as she did upon the initial determination of disability, in order to lawfully receive her long term disability benefits.

44. As a result of Defendant's abuse of discretion, acts of bad faith, breach of fiduciary duty, and violations of administrative regulations, Plaintiff is entitled to immediate payment of all past due long term disability benefits, plus interest thereon at the highest legal rate.

## DEFENDANT'S CONFLICT OF INTEREST

45. Defendant is an insurance company acting as both claims administrator and claims fiduciary to Plaintiff and the Plan. As such, Defendant suffers an inherent conflict as both insurer and fiduciary and its factual findings and conclusions denying Plaintiff's rightful claims are to be considered with less deference upon review.

46. In addition, Plaintiff has reason to believe that Defendant unlawfully targets ERISA claims for denial and provides administrators and fiduciaries with monetary rewards for the denial of claims among several other known tactics directed at the illegal and self-serving denial of proper claims for Plan benefits. These practices, which were no doubt used in the denial of Plaintiff's claim, indicate a level of conflict of interest that is in direct violation of the terms of ERISA and the trust laws concerning the duties of a fiduciary.

47. As a result of Defendant's high degree of conflict inherent in the handling and determination of Plaintiff's claim, the Court should apply a *de novo* review, or a lower level of deference under an abuse of discretion standard of review, of the Defendant's factual findings and determinations.

## PLAINTIFF'S CLAIMS FOR ATTORNEY FEES AND COSTS

48. Pursuant to 29 U.S.C. §1132 (g), Plaintiff seeks an award of her reasonable attorney's fees and costs of court in connection to her just pursuit of this action against Defendant.

## PRAYER

49. Plaintiff respectfully prays that upon trial of this matter that this Honorable Court find in favor of Plaintiff and against Defendant and issue judgment against Defendant as follows:

   a. That Defendant pay to Plaintiff all past benefits due and owing to Plaintiff consistent with the terms of the Plan, as well as all interest due thereon and as allowed by law;

   b. That Defendant immediately authorize Plaintiff's long term disability benefits.

   c. That Defendant pay a penalty for failing and refusing to provide Plaintiff with a copy of the Summary Plan Description within 30 days after formal request for same had been made.

   d. That Defendant pay all reasonable attorney's fees and costs associated with the prosecution of this matter; and

   e. For all other such relief, whether at law or in equity, to which Plaintiff may show herself justly entitled, including the remand of this claim, if so required by law.

Respectfully submitted,

SYLVESTER ANDERSON
State Bar# 01214950
SDT# 5012
Regency Square
6001 Savoy, Suite 305
Houston, Texas 77036
(713) 533-9500
(713) 533-9645 (Fax)
sa@sylvesteranderson.com

ATTORNEY FOR PLAINTIFF,
SHERRY SMOTHERMAN